38855, 38856. CHILIVIS et al. v. TUMLIN WOODS REALTY ASSOCIATES, INC. et al.; and vice versa.

WELTNER, Justice.

Chilivis, et al. (Chilivis) appeal from the grant of an interlocutory injunction sought by Tumlin Woods Realty Associates, Inc. (Tumlin Woods) to prevent foreclosure upon certain real property under a security deed held by Chilivis. The property is located in Athens, Georgia, and includes an apartment complex and the land upon which it is situated.

In 1977 Chilivis conveyed the property to NMC Realty Corporation (NMC) (not a party here) by warranty deed. As part of the consideration NMC executed and delivered to Chilivis a promissory note and a deed to secure debt (hereinafter referred to as the second security deed). The second security deed was subordinate to three primary security deeds, each involving one of three separate tracts which together comprised the whole.

The second security deed contains the following provision: "If Grantor further encumbers the premises by any mortgages, loans or security deeds securing loans made to Grantor without notice to and prior written permission from Grantee, such will constitute an event of default. . . ." The deed also contains this definition: "The words 'Grantor' and 'Grantee' whenever used herein shall include all individuals, corporations . . . and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them. . . ."

Immediately after this transaction, NMC sold the property to

Tumlin Woods, after notifying Chilivis and obtaining written permission for the transfer.

In 1981, Tumlin Woods agreed to sell the property to Beechwood Partners, Ltd. (Beechwood) (also not here a party). Chilivis was not notified of this transaction nor was written permission obtained therefor. Beechwood made a down payment and executed a "wrap-around" promissory note for the balance, to be paid in installments with interest. At the same time, Tumlin Woods and Beechwood executed an instrument denominated "Agreement for Deed," under which Tumlin Woods agreed to place a warranty deed in escrow, to be delivered to Beechwood upon the completion of all payments called for in the promissory note, the terms of which were incorporated into the "Agreement for Deed." In the event of a default by Beechwood, Tumlin Woods was given the option of rescinding the transaction or exercising a power of sale over the property; Tumlin Woods was to look only to the property or the proceeds of its sale for payment, and Beechwood would not be liable for any deficiency. However, in the event of a sale, Beechwood was entitled to any overplus. The "Agreement for Deed" also included the following provision: "Seller and Buyer acknowledge and agree that this Agreement is not a mortgage or security deed to secure a loan made to Buyer by Seller, that this is an agreement to convey the Property to Buyer upon the completion of the terms and provisions of this Agreement including, but not limited to, the payment of the stated purchase price for the Property which is in part evidenced by the Note, that this is not a loan secured by the Property and that no title in and to the Property has passed to Buyer or will pass to Buyer until Buyer fulfills and complies with each and every term and provision hereof." Finally, Beechwood was given immediate possession of the property and was responsible for taxes, maintenance and insurance thereon.

Chilivis, upon learning of this transaction, and considering it to be an event of default within the meaning of the clause of the second security deed prohibiting further encumbrance without prior notice and consent (hereinafter referred to as the "no further encumbrance clause"), commenced foreclosure proceedings. Tumlin Woods, in turn, filed this action to enjoin foreclosure.

The trial court found that the second security deed is a valid and enforceable instrument governing the rights of the parties to this litigation, that the "no further encumbrance clause" is valid and enforceable irrespective of any impairment to the collateral of the creditor (Chilivis), and that Tumlin Woods stands in the shoes of grantor under the terms of the second security deed. The court found no evidence of any event of default specified in the second security deed which would authorize foreclosure, and stated that the

"Agreement for Deed" does not impair the collateral of Chilivis in a manner prohibited by the second security deed. The court concluded that the intent of the parties to the second security deed was that the grantor be limited and restricted from obtaining a loan using the real property as security; that the "Agreement for Deed" was not a mortgage, loan or security deed securing a loan made to grantor as prohibited without notice and consent by the second security deed.

1. The trial court found that Tumlin Woods was a "grantor" within the meaning of the second security deed, but made no express ruling as to the status of Beechwood with respect to the second security deed. Chilivis contends that Beechwood is a grantor under the definition in the second security deed, and that the use of the property as security for Beechwood's obligation to pay the purchase price violated the "no further encumbrance clause." Tumlin Woods contends that implicit in the order of the trial court is a finding that Tumlin Woods, and not Beechwood, is a grantor; as Tumlin Woods did not pledge the property as security for a loan, no violation of the "no further encumbrance clause" occurred.

We have little difficulty in concluding that Beechwood is a grantor under the plain language of the second security deed. Tumlin Woods, as purchaser from NMC, is a successor to NMC, holding under a deed from NMC, and thus stands in the shoes of the original grantor. Beechwood, having obtained at least an equitable interest to the property under a warranty deed executed by Tumlin Woods and placed in escrow, and having come into possession of the property, must be considered as "holding under" Tumlin Woods, if not a successor to Tumlin Woods; thus Beechwood is a "grantor" within the meaning of the second security deed.

2. This brings us to the more significant issue — whether the transaction between Tumlin Woods and Beechwood, specifically the "Agreement for Deed," is a mortgage, loan or security deed securing a loan made to grantor so as to bring into effect the "no further encumbrance clause." Plainly, if Tumlin Woods and Beechwood had consummated the sale of the property through the more traditional exchange of deeds (warranty deed and deed to secure debt), the clause would be applicable. It is also clear that the recital in the "Agreement for Deed," to the effect that it is not a mortgage, loan or deed to secure debt, was designed to take it out of the "no further encumbrance" language of the second security deed.

Although an "Agreement for Deed" is an unfamiliar device in Georgia practice, it closely resembles a bond for title, which was an instrument commonly used in the past in connection with sales of land. "A bond for title, though cast in the traditional mold of the

common-law bond, is in effect a sealed contract for the sale and purchase of land, serving the double purpose of a purchase-money mortgage and a conveyance to the purchaser of an equitable estate which becomes a legal title upon completion of the agreed payments. As a security instrument it strongly resembles the retention title contract or conditional sale in the field of personal property; and the vendor-creditor's position is closer to that of the grantee in a security deed than a mortgagee, since he remains vested with legal title rather than a mere lien." Pindar, Ga. Real Estate Law and Procedure, § 20-70 (2d ed. 1979). "While legal title remains in the maker of a bond for title until full payment of the purchase price, such title is retained only as security for such payment and an equitable estate arises in favor of the holder of the bond limited by the amount of his investment. He becomes entitled to full possessory rights in the land and for most purposes becomes the owner of the land as against all persons except the maker of the bond and those claiming under him. When the full price has been paid, he acquires a perfect equity which is the equivalent of a legal title upon which ejectment may be maintained." Id. at § 20-71. Furthermore, the placing of a deed in escrow in connection with the execution of a bond for title was not infrequent in Georgia. Id. at § 27-10.

In Florida, where the agreement under consideration was executed, the courts have ruled that a contract for deed is in essence a purchase-money mortgage. "The Florida courts have for some time recognized that an agreement for deed is essentially only a security device intended to take the place of a purchase money mortgage and 'must be deemed and held to be a mortgage, subject to the same rules of foreclosure and to the same regulations, restraints, and forms as are prescribed in relation to mortgages.' [Cits. omitted]. Thus, a vendee under an agreement for deed stands in the same position and holds the same property interest as a mortgagor under a mortgage." Hoffman v. Semet, 316 S2d 649, 651 (Fla. App. 1975). "An installment land sale contract, or so-called contract for deed, evidences a sale of the land and an obligation of the seller to convey and of the purchaser to pay the purchase price in installments, usually extending over a long period of time, and is essentially a security instrument taking the place of a purchase money mortgage." H & L Land Co. v. Warner, 258 S2d 293, 295 (Fla. App. 1972).[1]

---

[1] The Florida interpretation is mandated in part by Fla. Stat. § 697.01 (1973), which essentially provides that all conveyances for the purpose of securing payment of money shall be deemed mortgages. See Torcise v. Perez, 319 S2d 41, 42 (Fla. App. 1975). Thus it does not follow that a "lien theory" would be applied to a contract for deed or bond for title in Georgia.

In *Lytle v. Scottish American Mtg. Co.,* 122 Ga. 458 (8) (50 SE 402) (1905), it was said of a bond for title: "In the sale of land on credit where the vendor retains title, he has not the absolute estate, but is a trustee holding the title only as security. For many purposes the transaction may be treated in equity as though the vendor had made a deed to the vendee and the latter had thereupon given a common-law mortgage to secure the purchase-money." And in Tobler v. Yoder & Frey Auctioneers, 462 FSupp. 788, 795 (S. D. Ga. 1978), the court held that a bond for title is in essence a deed to secure debt, citing Code Ann. § 67-1301 and *Carter v. Johnson,* 156 Ga. 207 (119 SE 22) (1923).

We conclude that the "Agreement for Deed" between Tumlin Woods and Beechwood is *for all practical purposes* no different from a bond for title. It differs from a purchase-money mortgage, in that title remains in the vendor. It differs from a deed to secure debt, in that the vendor simply withholds a deed until the purchase price is paid, rather than delivering a deed and accepting a deed to secure debt in return.

While it is neither a mortgage nor a deed to secure debt, the agreement nonetheless falls within the prohibitory language of the "no further encumbrance clause" in the second security deed, as it is clear that the property was given as security for a loan (the amount of the purchase price less the down payment) made to grantor (Beechwood). In practicality, it is no different than if Tumlin Woods had delivered a warranty deed to Beechwood and accepted a deed to secure debt in return. The agreement created an equitable interest in Beechwood and a security interest in Tumlin Woods. The resulting security interest is an encumbrance upon the land, which may be defined as ". . . every right to, or interest in, the land, which may subsist in a third party, to the diminution of the value of the land, but at the same time consistent with the passage of the fee thereto." 20 AmJur2d § 81, p. 645. To hold otherwise would be to ignore the substance of the transaction.

In summary, we conclude that Beechwood is a "grantor" as defined by the second security deed, and that, as a matter of law, the transaction represented by the "Agreement for Deed" is a loan to the grantor secured by the real property, as prohibited by the "no further encumbrance clause." Thus the trial court erred in enjoining foreclosure on these grounds.

In case no. 38856, Tumlin Woods contends that the trial court erred in ruling that the "no further encumbrance clause" in the second security deed is valid and enforceable, irrespective of impairment to the collateral of the creditor.

In *Interstate Security Police, Inc. v. C. & S. Emory Bank,* 237 Ga.

37 (226 SE2d 583) (1976), a loan contract provided that " 'until the loan is repaid in full, borrower will not, without consent of bank, (a) in the operation of business, incur other indebtedness for borrowed money.' " We held that "[t]he restraint against incurring additional operating business debt . . . does not appear unreasonable in the commercial setting of this loan agreement. It protects the legitimate rights of the lender while the loan remains unpaid. This loan repayment is secured by accounts receivable and the general solvency of the borrower. This contract provision is designed to promote the solvency of the borrower during the life of the loan.

"We believe this contract provision falls within the private enterprise area in which corporate parties are free to obligate themselves in this manner as an inducement to lenders to make commercial loans to them for use in the operation of their businesses. *There is no contention here that the lender has unreasonably withheld its consent to any request of the borrower to obtain other loans needed by it for operating its business.*" (Emphasis supplied.) 237 Ga. at p. 39.

*Interstate Security* is authority for the proposition that the clause now under consideration, entered into by experienced businessmen in the context of a commercial transaction, is reasonable, valid and enforceable. See also *Provident Sav. Life Assurance Society v. Ga. Indus. Co.,* 124 Ga. 399 (2) (52 SE 289) (1905). As in *Interstate Security* cited, there is no contention that Chilivis unreasonably withheld permission for any further encumbrance of the property. Certainly the holder of a second security deed, to a greater degree than a primary lender, has a significant interest in limiting further encumbrance upon the property held as security.

In *Tybrisa Co. v. Tybeeland, Inc.,* 220 Ga. 442 (139 SE2d 302) (1964), a deed to secure debt required the written consent of the grantee to make substantial alterations, and provided that a violation of this covenant authorized an acceleration of the indebtedness and sale under power. The grantor/vendee violated the covenant by making improvements to the property without consent. We held the clause valid and enforceable, even though the improvements may have enhanced the value of the land, disregarding any issue as to impairment of collateral.

We conclude that, at least under the facts of this case, the trial court was correct in holding the "no further encumbrance clause" to be. valid and enforceable without regard to impairment of the collateral of the creditor.

*In case no. 38855, the judgment is reversed. All the Justices concur, except Smith, J., who dissents and Bell, J., not participating.*

*In case no. 38856, the judgment is affirmed. All the Justices concur, except Bell, J., not participating.*

DECIDED NOVEMBER 12, 1982.

*Powell, Goldstein, Frazer & Murphy, Gary G. Grindler, David J. Llewellyn, Nickolas P. Chilivis,* for appellants.
*Alston, Miller & Gaines, Peter M. Degnan, G. Conley Ingram,* for appellees.