A99A1531. EMPIRE DISTRIBUTORS, INC. et al. v. HUB MOTORS COMPANY.
(524 SE2d 264)

ANDREWS, Presiding Judge.

Susan Olk, as president of Empire Distributors, appeals from the trial court's grant of Hub Motors' motion for summary judgment on Olk's complaint for fraudulent inducement and breach of a duty of good faith and fair dealings in negotiating several leases for Ford vans and trucks. Because the trial court correctly found that Olk failed to show she reasonably relied on the salesman's representations, we affirm.

This suit involves five leases: two Ford vans that Olk leased in November 1991, and three trucks that she leased in October, November and December 1992. Olk's complaint alleges that one of Hub's salesmen fraudulently induced her to lease trucks for her business instead of purchasing the trucks. Olk became unhappy with the leases when Empire's vice-president started questioning the wisdom of leasing the vehicles because she "wasn't happy with the residual" value at the end of the lease period. Several weeks after she entered into the last lease, Olk consulted her accountant who informed her it was costing her $15,093 more to lease the trucks than to purchase them. Olk claims that the reason she decided to lease the trucks and vans instead of purchasing them was the salesman's assurance that the interest rate available on a lease vehicle was just as good if not better than the interest rate Olk could get from her own bank if she bought the trucks and vans.

Hub Motors filed a motion for summary judgment on Olk's complaint, which the trial court granted. The trial court found that Olk could not show she reasonably relied on the salesman's representations and also had not shown any damage resulting from leasing the vehicles instead of purchasing them. We agree.

1. The essential elements of fraud are: (1) a representation made by the defendant, (2) with the knowledge that it was false, (3) and with the intention of deceiving the plaintiff; (4) a reasonable reliance upon the representation by the plaintiff; and (5) loss by the plaintiff as a proximate result of the misrepresentation. *Evans Toyota v. Cronic,* 233 Ga. App. 318, 319-320 (503 SE2d 358) (1998). Here, Olk's only evidence on the issue of damages is a letter from her accountant stating that the additional cost to Empire to lease the vehicles as opposed to buying them is $15,093.68. The accountant included sev-

eral pages of amortization schedules with the letter. Based on this, Olk claims she was damaged by this amount. Even assuming this letter is sufficient to show damages, Olk cannot show that she reasonably relied on the salesman's representations concerning the interest rate she would be paying or that her loss was a proximate result of these misrepresentations.

There was deposition testimony that there are many reasons why a company may prefer to lease rather than buy vehicles, even if it were paying a higher interest rate for the lease than it would for the purchase, and it is difficult if not impossible to compare payments made under a lease with payments made on a purchase. Nevertheless, even assuming that the total cost under the lease compared with the total cost under a purchase was the only important factor for Olk, she had all the figures she needed to determine whether the lease was more expensive than the purchase. She testified at her deposition that she had already negotiated a sales price with the fleet manager at Hub Motors before she went to the salesman's office to discuss a lease. The lease papers she signed gave all charges and fees, the amount due at inception, the amount of the payments, the length of time of the lease and the residual value of the truck or van at the end of the lease. Therefore, Olk could easily compare how much she would pay under the lease with how much she would pay on a purchase.

Olk also claims that the salesman refused to give her the cap cost or what she contends is the actual price of the vehicle under the lease and, therefore, she was unable to determine what rate of interest they were charging her. But, Olk's claim is not that she was damaged because she is paying more interest than she was led to believe; rather, Olk's claim is that it cost her some $15,000 more to lease than to purchase. Because this information was readily available to her at the time she signed the lease, she cannot show that she reasonably relied on the salesman's statements about the equivalent interest rate. See *Garcia v. Charles Evans BMW*, 222 Ga. App. 121 (473 SE2d 588) (1996). A buyer must exercise ordinary diligence and use the means available to him to verify representations. Olk's admitted "blind reliance" on the salesman's representations when the means of knowledge were at hand shows an unjustified lack of due diligence. *Hartsfield v. Union City Chrysler-Plymouth*, 218 Ga. App. 873, 876 (463 SE2d 713) (1995). Olk never consulted with her accountant until after she had signed five leases over a period of about a year. The only reason she discussed it with him then was because the vice-president of her company complained that the residual values of the trucks were too high after 24 months of payments; yet the number of payments, the amount of the payments, and the residual value were clearly listed on the leases and were apparent to Olk before she

signed them.

In addition, we note that the cases cited by Empire concern a failure to disclose a fact which the other party could not discover by the exercise of ordinary prudence and caution, and therefore, they are not on point. Likewise, contrary to Olk's argument, *Evans Toyota*, supra, does not apply in this case. In *Evans Toyota*, the salesman convinced Cronic to buy a used truck by assuring him the truck was fully covered under the manufacturer's warranty. At the time, the salesman knew the truck had been in an accident and was repaired with nonToyota authorized parts and labor and, therefore, could not be covered under the warranty. Id. at 320. Unlike this case, the customer could not have discovered that the truck was repaired with nonauthorized parts.

Thus, because Olk could not have reasonably relied on any representations by Hub Motors' salesman in determining whether it would cost more to lease or purchase the vehicles and because any loss suffered by Olk was not the result of the salesman's alleged misrepresentations, the trial court correctly granted Hub Motors' motion for summary judgment on Olk's fraud claim.

2. Olk also claims the trial court erred in granting summary judgment on her claim for breach of good faith and fair dealings. The trial court correctly found that the count alleging this claim referred only to the performance of duties under the contract and because Olk alleged bad faith and fraud only in the inducement of the contract itself and not in the performance of the contract, Hub Motors was entitled to summary judgment on this claim. See *Southern Business Machines v. Norwest Financial Leasing*, 194 Ga. App. 253, 256 (390 SE2d 402) (1990) (a duty of good faith and fair dealing is implied in all contracts in this state, but there can be no breach of this duty where a party to the contract has done what the provisions of the contract expressly give him the right to do). Olk argues on appeal that evidence was presented on this issue, but fails to point to any evidence in the record that Hub Motors breached an implied duty of good faith in the performance of the contract. This enumeration of error is without merit.

3. Hub Motors' motion for penalty for frivolous appeal is denied. *Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 29, 1999.

*Elizabeth Pelypenko*, for appellants.
*Misner, Scott & Grate, Steven J. Misner*, for appellee.